■ HARLAN DEBELL, Appellant, v WELLBRIDGE CLUB MANAGEMENT, INC., Formerly Known as CLUB SPORTS INTERNATIONAL, INC., Doing Business as THE PENINSULA SPA, et al., Respondents. [835 NYS2d 170]—

Order, Supreme Court, New York County (Sherry Klein Heitler, J.), entered July 19, 2005, which granted defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated.

Plaintiff alleges that he was seriously injured while participating in member activities at The Peninsula Spa (the Spa) under the supervision of defendant trainer Eric Schreiber. During a complimentary one-hour training session, Schreiber allegedly insisted that an upper body arm exercise on the "hang bar" was the best equipment for plaintiff's back despite his difficulty in using the hang bar and complaints that it hurt his upper back, shoulders and neck. During that session, plaintiff tore the rotator cuff in his left shoulder and suffered a herniated disc in his cervical spine.

In support of the motion to dismiss the complaint, defendants argued, inter alia, that plaintiff's claims are barred by a release that includes a covenant against bringing suit for personal injuries incurred in a personal training session. The release is found in the membership application plaintiff signed and provides: "[T]he Member hereby assumes all risks associated with the use of the Spa facilities, waives all rights . . . and hereby agrees to release . . . the Spa from the indemnify [*sic*] the Spa against, any and all claims, including, but not limited to personal injury, including bodily injury and death . . . *whether or not based on the acts or omissions of the Spa*, arising out of

or in any way connected with the use of the Spa facilities" (emphasis added).

While this language does not specifically bar suits for personal injuries as a result of defendants' negligence, it clearly "convey[s] a similar import" (*Gross v Sweet*, 49 NY2d 102, 108 [1979]), and its plain meaning should not be " 'subverted by straining to find an ambiguity which otherwise might not be thought to exist' " (*Uribe v Merchants Bank of N.Y.*, 91 NY2d 336, 341 [1998], quoting *Loblaw, Inc. v Employers' Liab. Assur. Corp.*, 57 NY2d 872, 877 [1982]). Thus, the motion court properly rejected plaintiff's claim that the release is ambiguous and therefore unenforceable.

However, the motion court's rejection of plaintiff's additional claim that the release is void as against public policy was error. General Obligations Law § 5-326 provides that: "Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, *place of* amusement or *recreation, or similar establishment* and the user of such facilities, *pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities*, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable" (emphasis added). The motion court found that plaintiff was undergoing instruction in strength-training exercises and was actually injured during an instructional session, and accordingly held that the General Obligations Law does not void the release, citing *Lemoine v Cornell Univ.* (2 AD3d 1017 [2003], *lv denied* 2 NY3d 701 [2004]) and *Evans v Pikeway, Inc.* (7 Misc 3d 348 [2004]). This was error. Rather than focusing on whether plaintiff's *activity* was recreational or instructional, the motion court's focus should have been on whether the *Spa's* purpose was recreational or instructional (*see Lemoine*, 2 AD3d at 1019). Where a *facility* "promotes . . . a recreational pursuit, to which instruction is provided as an ancillary service," General Obligations Law § 5-326 applies even if the injury occurs while receiving instruction (*Bacchiocchi v Ranch Parachute Club*, 273 AD2d 173, 175 [2000]). "In assessing whether a facility is instructional or recreational, courts have examined, inter alia, the organization's name, its certificate of incorporation, its statement of purpose and whether the money it charges is tuition or a fee for use of

the facility" (*Lemoine*, 2 AD3d at 1019; *Bacchiocchi*, 273 AD2d at 175).

Here, the training sessions, arguably instructional in nature, appear to be ancillary to the recreational activities offered by the Spa. Published advertisements proclaim the Spa to provide "the latest facilities and services in health and beauty"; by joining the Spa, which requires the payment of an initiation fee plus a monthly *membership* fee, the member is entitled to access to the exercise equipment, the "full service beauty salon," swimming pool, whirlpool, jacuzzi, sauna, steam, and "complete body and skin care treatments," as well as a free introductory class and four free training sessions. There is no mention of training or instruction. Even if, as in *Evans* (7 Misc 3d 348 [2004], *supra*), we were to focus on whether plaintiff was at the Spa for the purpose of receiving instruction, our determination would not change, given a vastly different waiver, the fact that plaintiff did not take a training session until nine months after joining the Spa, and no evidence that plaintiff enrolled at the Spa for the purpose of receiving instruction. Concur—Mazzarelli, J.P., Friedman, Nardelli, Williams and Malone, JJ.